A. E. WILLIAMS *v.* ALCORN ELECTRIC LIGHT COMPANY
ET AL.

[53 South. 958.]

1. MECHANIC'S LIEN. *Superintendent. Laborer. Section 3074, Code 1906.*

A superintendent in the employ of a contractor whose main duties are to employ, pay off and discharge laborers, and supervise and direct them while at work is not a laborer within the meaning of sec. 3074; Code 1906, and not entitled to its benefits; although he occasionally assists in laying blocks of cement used in the work.

2. LABORER, MEANING OF IN SECTION 3074, CODE 1906.

To constitute a person a laborer, physical toil must be the main ingredient of the services rendered.

3. SAME.

The word "Laborer" in its usual acceptation, "carries with it the idea of actual physical and manual exertion or toil, and is used to denote that class of persons who literally earn their bread by the sweat of their brows, and who perform with their own hands, at the cost of considerable labor, the contracts made with their employers."

FROM the circuit court, Alcorn county.

HON. JOHN H. MITCHELL, Judge.

This was an action by A. E. Williams, appellant, against his employers, Kelly, Pope and Rather, contractors, and appellees, the Alcorn Electric Light Company and Alcorn Woolen Manufacturing Company, by which he, the said Williams, sought to recover his wages due him by his employers. Appellant served written notice upon Alcorn Electric Light Company and Alcorn Woolen Manufacturing Company, appellees, of wages due him as provided by section 3047, Code 1906. Payment of the amount alleged to be due appellant not having been made, this suit was instituted, which resulted in a verdict and judgment against Kelly, Pope & Rather, his employers, no defense having been made by them, and in the peremptory instruction of the court to the jury to find for appellees, the Alcorn Electric Light Company and Alcorn Woolen Manufacturing Company, from which action appellant appealed.

A full statement of the facts is given in the opinion of the court.

*W. J. Lamb,* for appellant.

This court, in passing on the question of what is a laborer under this statute has said:

"The 'laborer' whose wages to the amount of one hundred dollars are exempt from garnishment by section 1244 of the Code is 'one who subsists by physical toil in distinction from one who subsists by professional skill.' Where physical toil is the main ingredient of the services rendered, although directed and made more valuable by skill, the person performing them is a laborer within the meaning of the statute. The appellant is shown by the record to have been a laborer, engaged as a clerk in a store, and the wages earned by him as such laborer are exempt from garnishment." *Williams* v. *Link,* 64 Miss. 643.

Tested by the definition given in the above case, the appellee is certainly a laborer and is intended to be protected, as it was this class of laborers that section 3047 was intended to protect, for his duties certainly required physical toil even if he was skilled in the manufacture of concrete blocks. In passing on such statutes, it must be remembered that they must be given a liberal construction. This is held to be correct by all courts of last resort.

In the case of *Pendergast* v. *Yandes,* 8 L. R. A., p. 849, the court says:

"While that appellant in this case was called superintendent, it is shown that he was not an officer of the company nor was he general manager or a general agent. His principal duties were to superintend the construction of trenches, and the laying of gas pipes. Within the authorities above cited, he was to all intents and purposes a laborer. Under the liberal construction to be given the statute before us, he was a laborer, within that term as used in the statute, and his claim for wages should be declared a preferred claim, and paid before a distribution of the assets among the general creditors." *Pendergast* v. *Yandes,* 8 L. R. A. 851.

In the case of *Stryker* v. *Cassidy,* 76 N. Y., p. 50, where that court passed on a statute from which our statute was modeled, it said:

"He (speaking of the architect) sought to enforce a statutory lien for his labor as such architect, and the court in commenting on his right to said lien, said: 'The architect who superintends the construction of a building performs labor as truly as the carpenter who frames it, or the mason who lays the walls, and labor of a most important character. It is not any less labor, within the general meaning of the word, that it is done by a person who is fitted by special training and skill for its performance. The language quoted makes no distinction between skilled and unskilled labor, or between mere man-

ual labor, and the one who supervises, directs and applies the labor of others." *Stryker* v. *Cassidy,* 76 N. Y. 50.

In the case of *Capron* v. *Strout,* 11 Nev. 304, the court said, as follows:

"Stewart was employed as foreman of a mine at eight dollars per day, payable monthly. His duties were to act as guard foreman, to 'boss' the men who were at work in the mine, keep their time and give them orders for their pay at the end of each month. He sought to enforce his claim for wages as a lien against the mining property. In answer to the argument that he was not a laborer, within the meaning of the law, the court said: 'It is said that he performed no work or labor in or upon the mine, and it is argued that the intention of the law was to secure those only who performed labor upon the mine with their hands; that to give it a wider construction, one that will make it include the wages of a foreman like Stewart, will make it cover the case of the general superintendent, and other officers of a corporation, and thereby impair the remedy of those who are the special objects of legislative care. We do not admit that no distinction could be made in this respect between a foreman of miners and the superintendent of a company; but whether there could or not, we have no doubt that the respondent's claim comes within the spirit as well as the letter of the law. According to the findings, he certainly did work in the mine, though not with his hands, and it is clear that the direct tendency of his work was to develop the property. We think that the foreman of work in the mines is as fully secured by the law as the miners who work under his direction." *Capron* v. *Strout,* 11 Nev. 304.

The case of *Flagstaff Silver Mining Co.* v. *Cullens,* 104 U. S. (26 L. Ed.) 704, is as nearly parallel with the case at bar as it is possible for two cases to be; and, in that case, after a discussion of the matter, the court said:

"He was the overseer and foreman of the body of miners who performed the manual labor upon the mine. He planned and personally superintended and directed the work, with a view to develop the mine and make it a successful venture. He appears from the findings to have performed duties similar to those required of the foreman of a gang of track hands upon a railroad, or a force of mechanics engaged in building a house. Such duties are very different from those which belong to the general superintendent of a railroad, or the contractor for erecting a house. Their performance may well be called work and labor; they require the personal attention and supervision of the foreman and occasionally in an emergency, or for example, it becomes necessary for him to assist with his own hands. Such duties cannot be performed without much physical exertion, which, while not so severe as that demanded of the workmen under the control of the foreman, is, nevertheless, really work and labor. Bodily toil as well as some skill and knowledge in directing the work is required for their successful performance. We think that the discharge of such duties may well be called work and labor, and that the district court rightfully declared the person who performed them entitled to a lien, under the law of the territory. *Flagstaff Silver Mining Company* v. *Cullens,* 104 U. S., p. 704.

Now, as was said in the case above mentioned, the appellant in this case was not a contractor; he was not a general agent, nor were the services required of him of a professional character. We especially invite the court's attention to the case last cited for we think it is conclusive as to the point that appellant in this case was a laborer within the meaning of section 3074 of the Code of 1906, and that the court erred in holding to the contrary.

On the 19th day of March, 1906, Kelly, Pope & Rather gave to the Tishomingo Savings Institution an order on

the Alcorn Woolen Manufacturing Company for it to pay to the Tishomingo Savings Institution whatever sum was due it to them, and the notice of the appellant was not given to the appellees, the Alcorn Woolen Manufacturing Company and the Alcorn Electric Light Company till the 19th day of September, following, so, of course, we recognize that if the case of *Spengler et al.* v. *Stiles-Tull Lumber Company,* 94 Miss., page 781, is a correct enunciation of the law, then, the Tishomingo Savings Institution having received its order prior to the notice given by the appellant would not be entitled to recover anything from the Alcorn Woolen Manufacturing Company; but we do not concede or waive any right that the appellant has because of this case to which we last refer. This case was decided by a divided court, and it might possibly be that this doctrine at some subsequent time, if not now, might be changed. By referring to the record you will see that Kelly, Pope and Rather did not give the Tishomingo Savings Institution an order on the Alcorn Electric Light Company, and the record further shows that, at the time the appellant gave his notice to the Alcorn Electric Light Company, the Alcorn Electric Light Company owed Kelly, Pope and Rather four hundred and four dollars, and sixty-six cents. Now, if our contention that this appellant is a laborer, within the meaning of the statute, is correct, he is entitled to a judgment against the Alcorn Electric Light Company for four hundred and four dollars and sixty-six cents.

We think, in view of the facts in this case and the authorities cited, that the court erred in giving a peremptory instruction for the appellees, the Alcorn Electric Light Company and the Alcorn Woolen Manufacturing Company, and that he should have instructed the jury to find for the appellant against the Alcorn Electric Light Company for the sum found to be due from it to Kelly, Pope and Rather.

*J. M. Boone,* for appellees.

The case of *Williams* v. *Link,* in 64th Mississippi, page 641, referred to by counsel for the appellant in his brief, defines who is a laborer working for wages, as follows: "One who subsists by physical toil in distinction from one who subsists by professional skill."

Under this definition it cannot possibly be successfully contended that the appellant is a laborer so as to entitle him to the benefits of this section 3074. This case of *Williams* v. *Link* refers to the case of *Weymouth* v. *Sanborn,* 43 N. H. 170, 80 American Decisions 134. This last case seems to be a leading authority on the subject, and is referred to by many courts for authority; and by reference to this case it may be seen that under no phase of the testimony in the case at bar can the appellant claim to be a laborer in the sense of this statute.

The class of persons denominated laborers who are entitled to the exemptions and liens of this sort has been held by a great majority of the courts to refer to those whose services were manual and menial, and those who were responsible for no independent action, but did the work or a stated job under the direction of a superior, and hold that it does not include one who keeps the accounts of the receipts and disbursements, and in the absence of the superintendent had charge and control of the business. *Wilder* v. *Ferguson,* 18 American State Reports 495, 42 Minn. 112. This case refers to many authorities sustaining the propositions that a superintendent does not come under the meaning of the term of a laborer.

One of the leading authorities on this question is the case of *Oliver* v. *Macon Hdw. Company,* 98 Ga. 294, which is reported in 58 American State Reports 300, wherein a very lengthy note is given the definition of "laborer," and wherein it is stated by the author of this note that the word, laborer, has been frequently defined by the different courts of last resort as follows:

"The common and ordinary signification of the term 'laborer' accords, we think, with the definition given by the best lexicographers, and is understood to be physical toil. And the term 'laborer' is ordinarily employed to denote one who subsists by physical toil in distinction from one who subsists by professional skill. The exceptions for claims for labor would not, therefore, ordinarily be understood to embrace the services of the clergyman, physician, lawyer, commission merchant, or salaried officer, agent, railroad or other contractor, but would be confined to claims arising out of services where physical toil was the main ingredient, although directed and made more valuable by mechanical skill. . . ."

And in this note the case of *Williams* v. *Link, supra,* is referred to as a leading authority upon the question; and also referring to the case of *Farinholt* v. *Luckhard,* 90 Va. 936, 44 American State Reports 953, in which last case the court says:

"We think it is safe to say that the word 'laborer,' when used in its ordinary and usual acceptation carries with it the idea of actual physical and manual exertion and toil, and is used to denote that class of persons who literally earn their bread by the sweat of their brows, and who perform with their own hands, at the cost of considerable physical labor, the contracts made with their employers."

And on page 306 of this same note, the case of *Kyle* v. *Montgomery,* 73 Ga. 337, is referred to, in which it is held:

"But a 'boss' or director of an entire department of an extensive factory, employing and discharging the hands who work under him, and who receives a monthly salary payable at the end of every two weeks, and who is not required to do manual labor, but is expected, from his skill and intellectual fitness, to direct the work of the operatives under him, is not a day laborer whose wages are exempt from garnishment."

A complete and exhaustive definition of these terms is found in a note to the case of *Tabb* v. *Mallette,* in 102 American State Reports, beginning at the bottom of page 81, where will also be found a complete brief on these subjects, of late date, referring to all of the authorities, and showing that the above cases referred to are generally accepted as the law of the land, as to who is a laborer, and reference to that note would be a complete brief in this case without the further citing of authorities, and which sustains the action of the court below; and in this note it will be seen that the term "wages" is defined and held to include the idea not merely of one person working for another, but also that he shall work under the direction of another, and not as an independent contractor or workman. The authorities seem to be uniform, as shown in this note, that the words "wages" and "laborers" refer to one of not much independent responsibility, but who are subject to immediate supervision (page 95 of this note); and it is there stated that while "salary" and "wages" may be synonymous terms, their usages and general acceptation give to the word "salary" the significance somewhat different from the word "wages," in this, that the former is understood to relate to position or office, to be the compensation given for official or other service, as distinguished from "wages" the compensation for labor (page 95 of this note).

Wages, is defined as a compensation paid, or to be paid, by the day, week, etc., for the services of laborers, or other subordinate or menial employes.    29 A. and E. Ency. of Law, 2nd Ed., page 1085.

Under the above authorities, which seem to be by far of the greater weight and by the greater number of the courts, it is clear that the appellant was not a "laborer" in the sense of the statute in this case and under this record. He was employed and paid for his business capacity and knowledge and skill in the art of making concrete blocks and in erecting buildings, and

98 Miss.]    Brief for appellees.

was required to perform not manual labor in the making of the concrete blocks and laying of the same in the building, which was expected of and done by his employes, the laborers employed by him, whose wages were fixed by him and whose wages were paid by him, as the representative of Kelly, Pope and Rather; and while he may have occasionally in walking along the building straightened a block or assisted in laying a block of concrete, this occasional manual labor, if he did any, does not change the rule, and doesn't convert him into a laborer instead of a superintendent. And the courts say that, although this superintendent, or general manager, may incidentally do some manual labor connected with the work, this incidental manual labor cannot be segregated, as to its pay, from that of his pay as the general superintendent. The appellant was clearly the *alter ego* of Kelly, Pope & Rather in every sense of the word, being himself the master and absolutely the supreme officer in the construction of these buildings; and in no case have I been able to find that a person occupying that position is held to be a laborer, the wages of whom could be subjected under such proceedings as is attempted in this case.

We not only have a clear definition of the word "laborer," showing what the legislature meant by it, but the word "wages" clearly demonstrates the fact that the legislature in this section 3074 only had in its mind the laborers, such as those who made the blocks of concrete and actually did the work in the construction of this building.

So far as the record in this case is concerned, when we see that the appellant collected all moneys and paid all bills, including his own salary, hired and paid the laborers, this would seem to be an attempt to serve notice on himself to pay himself for his own salary. This record demonstrates clearly that he did not even have to call Kelly, Pope & Rather to authorize himself to pay

his own salary out of the moneys collected by him for them. He had complete control of the funds and arising from the construction of these buildings, and his sole effort in this case is to defeat the notice given to the Tishomingo Savings Institution for any balance that might have been due in a settlement with the appellees. It cannot be conceived that the legislature was attempting to protect a man occupying the position that the appellant in this case occupied as the legislature could not conceive where the appellant's salary could ever be endangered, as he was the sole collector and disburser of all funds, and if his salary should be held to be the wages of a laborer, then all that will be necessary hereafter to be done in order to entitle a man to take advantage of the lien provided in this statute would be to show that he was employed by the contractors, and that without regard to the character of his employment, or the nature of his work under this employment. And I submit that the legislature didn't mean nor intend to give these liens to employes generally, without regard to the character and nature of the work that was to be performed. It was intended to protect the hands that were employed by the appellant to mould and make the concrete blocks and place them in the building, and cannot apply to any one else in this case.

In 18 A. and E. Ency. of Law 2nd Ed., page 77, can be found a long list of authorities from the states of Kansas, Missouri, Maine, Georgia, New York, Tennessee and New Mexico, holding that the superintendent or the general manager is not a manual laborer.

In the case of *Flagstaff Silver Mining Co.* v. *Cullens,* 104 United States 704, which case is relied upon by the attorneys for the appellant herein, the rule therein laid down is in my judgment, a direct authority sustaining our side of this case. The 18th A. and E. Ency. of Law, *supra,* refers to that case as being one of the cases holding that a superintendent was not entitled to the lien,

and that case itself shows clearly that it was decided upon the peculiar facts in that case under the statute of Utah, that the duties required of the claimant in that case could not have been performed without much physical exertion and was really work and labor; and the court in that case found no criticism of the large number of cases referred to therein, in which it was held that an agent employed to disburse money and pay off hands in building a house, was not a laborer.

In the case of *Pendergast* v. *Yandes,* cited by the attorney for the appellant in his brief, it will be seen that this was a decision on a peculiar service performed by the plaintiff in that case, and the decision is based upon the proposition that the plaintiff was not an officer of the company, nor was he the general manager or general agent. In the case at bar, the appellant, Williams, was the general manager and general superintendent, standing in the place and stead of the principal, and therefore, that case is no authority against us.

In the case of *Stryker* v. *Cassidy,* 76 New York 50, cited by the counsel for appellant in his brief, I don't find that the statute is anything like the statute of Mississippi, under which this appellant is proceeding. That statute in that case provided that "any person who should perform any labor," which is very different from the expression "the wages of a laborer," and that case went off under the general language "any labor." In the subsequent cases in the state of New York, deciding lien and exemption statutes similar to ours, some of which are cited in my brief above, they take the same view of a laborer as is held in the case of *Williams* v. *Link,* 64 Mississippi, *supra.* This very case, in citing the cases of *Aikin* v. *Wasson,* 24 New York, and *Coffin* v. *Reynolds,* 37 New York, which cases were decisions under a statute making corporations liable for the debts owing by the corporation to laborers or servants, shows that they had the same idea of a laborer that the other

authorities cited in this brief held, viz: That laborers were persons performing manual or menial labor merely.

The Nevada case, *Capron* v. *Strout,* 11 Nev. 304, referred to by counsel for the appellant in his brief, was construing a mining statute, and the courts have held that liens given under mining statutes are different in their nature from ordinary liens given to the other character of labor, for the reason of the difference in the character of a superintendent of a mining force and the character of a superintendent in the construction of a building.

SMITH, J., delivered the opinion of the court.

Kelly, Pope & Rather, having a contract with appellees to build for them two cement houses in the city of Corinth, Miss., employed appellant at a salary of twenty-five dollars per week to superintend the construction thereof. Appellant occasionally assisted in laying the blocks of cement used in the construction of these buildings; but his main duties were to employ, pay off, and discharge the laborers, and supervise and direct them while at work. Kelly, Pope & Rather having become indebted to appellant on account of the services rendered by him, appellant gave notice thereof to appellees, as provided by section 3074, Code 1906. Payment of the amount alleged to be due appellant not having been made, this suit was instituted by appellant against his employers and appellees, which resulted in a verdict and judgment against his employers, and in a peremptory instruction of the court to the jury to find for appellees, and judgment for them accordingly; hence this appeal.

Appellant's right to recover depends upon whether or not he is a laborer within the meaning of said section 3074 of the Code of 1906. There is some conflict in the decisions relative to the matter under consideration, but in the language of the author of the note to *Tabb* v. *Mallette,* 102 Am. St. Rep. 84: "It would be difficult, if not

impracticable, to give any general definition of the words 'laborer,' or 'laboring man,' which would at once include all the cases falling within the words and exclude those falling without. It may, however, be safely said that the word 'laborer,' when used in its ordinary and usual acceptation, carries with it the idea of actual physical and manual exertion or toil, and is used to denote that class of persons who literally earn their bread by the sweat of their brows, and who perform with their own hands, at the cost of considerable physical labor, the contracts made with their employers," etc.

To constitute a person a laborer, physical toil must be the main ingredient of the services rendered. *Williams* v. *Link,* 64 Miss. 641, 1 South. 907. Appellant is, therefore, not a laborer within the meaning of the statute, and the court committed no error in granting the peremptory instruction.                    *Affirmed.*